## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

**VINAY BASSI,**

for himself and all others similarly situated,

*Plaintiffs*

v.

**APNA HOLDING, LLC,** d/b/a
APNA BAZAR CASH & CARRY,

**MASPETH WHOLESALE CORP.,** d/b/a
APNA WHOLESALE,

**S&K GREEN GROCERIES, INC.,** d/b/a
APNA BAZAR CASH & CARRY,

**DESH DEEPAK BHARDWAJ,** and

**JASWINDER SINGH,**

*Defendants.*

</td><td>

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**DEMAND FOR TRIAL BY JURY**

</td></tr>
</table>

Plaintiff Vinay Bassi, by his undersigned attorneys, brings this action, for himself and all others similarly situated, against Defendants Apna Holding, LLC, d/b/a Apna Bazar Cash & Carry; Maspeth Wholesale Corp., d/b/a Apna Wholesale; S&K Green Groceries, Inc., d/b/a Apna Bazar Cash & Carry; Desh Deepak Bhardwaj; and Jaswinder Singh. Based upon personal knowledge, information, and belief, Plaintiff alleges as follows:

### THE NATURE OF THE ACTION

1.    Defendants Desh Deepak Bhardwaj and Jaswinder Singh (collectively, the "Individual Defendants") own, direct, and operate Defendants Apna Holding, LLC, Maspeth

Wholesale Corp., and S&K Green Groceries, Inc. (collectively, the "Corporate Defendants"). Together, the Corporate Defendants comprise a chain of supermarkets and wholesale grocers operating as a single integrated enterprise, with locations in California, Massachusetts, New Jersey, New York, and Pennsylvania.

2.      From May of 2015 until January of 2017, Plaintiff Vinay Bassi ("Plaintiff" or "Mr. Bassi") worked as a store clerk for the Corporate Defendants. Although Plaintiff held the job title and performed the duties of a store clerk--a non-exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.--the Corporate Defendants improperly classified and paid him as an exempt employee. As a result, Mr. Bassi was paid below the minimum wage for the majority of his employment--and below the prevailing wage for store clerks for its entirety.

3.      With rare exceptions, Mr. Bassi worked in excess of sixty (60) hours per week for the Corporate Defendants; often, he worked in excess of seventy (70) hours per week. From June 2015 until his termination, Mr. Bassi worked at least one shift per week that was longer than ten (10) hours. From April 2016 until his termination, all of Mr. Bassi's six (6) weekly shifts were more than ten (10) hours long. Nonetheless, Mr. Bassi was never once paid the overtime premiums and spread-of-hours premiums to which he was entitled.

4.      Mr. Bassi brings this action to recover the unpaid wages, overtime premiums, and related penalties and damages he is owed pursuant to the FLSA. He brings this claim on his own behalf and for a collective of all current and former employees of the Corporate Defendants, who worked as clerks, assistants, and stockers (collectively, the "Collective Action Members") in the

time period that commenced three (3) years prior to the filing of this Complaint (the "Collective Action Period").

5.     Mr. Bassi also brings this action to recover the unpaid wages and overtime premiums he is owed pursuant to New York Labor Law ("NYLL"), §§ 650 et seq.; unpaid spread-of-hours premiums he's owed pursuant to N.Y. Comp.Codes R. & Regs. ("NYCRR") 12 §§ 142-2.2, -2.4; damages due to Defendants' failure to provide time for meals pursuant to NYLL § 162; and damages due to Defendants' violations of the wage notice provisions pursuant to NYLL §§ 190 et seq. Mr. Bassi brings these claims on his own behalf and as representative for a Federal Rule of Civil Procedure 23 class of all current and former employees of the Corporate Defendants, who worked in New York as clerks, assistants, and stockers (collectively, the "Class" or "Class Members") in the time period that commenced six (6) years prior to the filing of this Complaint (the "Class Period").

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).

7.     This Court has supplemental jurisdiction over Mr. Bassi's state law claims pursuant to 28 U.S.C. § 1367. Mr. Bassi's state law claims are sufficiently related to his FLSA claims as to comprise the same case or controversy.

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391. A substantial portion of the events or omissions giving rise to the claims occurred in this district, and Defendants maintain business locations in this district.

## THE PARTIES

10.     Plaintiff Vinay Bassi was, at all relevant times, an adult individual residing in Queens County, New York. Throughout the relevant time period, Mr. Bassi was employed as a store clerk by Maspeth Wholesale Corp. at its location on 56-28 56th Street, Maspeth, New York 11378 (the "Maspeth Location"). Mr. Bassi consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent forms are attached hereto, as Exhibit A, and incorporated by reference.

11.     Upon information and belief, Defendant Apna Holding LLC, is an active New York Corporation doing business as "Apna Bazar Cash & Carry Supermarket," with its principal place of business at 72-20 37th Avenue, Jackson Heights, New York 11372.

12.     Upon information and belief, Defendant Maspeth Wholesale Corp., is an active New York Corporation doing business as "Apna Wholesale," with its principal place of business at 56-28 56th Street, Maspeth, New York 11378.

13.     Upon information and belief, Defendant S&K Green Groceries, Inc., is an active New York Corporation doing business as "Apna Bazar Cash & Carry Supermarket," with its principal place of business at 113-18 Liberty Avenue, Richmond Hill, New York 11419.

14.     The Defendants listed in paragraphs 11 through 13 are collectively referred to as the "Corporate Defendants."

15.     The Corporate Defendants are operated together as a single integrated enterprise, with uniform employment policies, including wage and hour policies, meal-break policies, and policies regarding the posting of wage notices.

16.     Defendant Desh Deepak Bhardwaj ("Mr. Bhardwaj"), is an owner and operator of the Corporate Defendants. Upon information and belief, throughout the relevant time period, Mr. Bhardwaj was responsible for determining the Corporate Defendants' policies with respect to payroll and employment practices, and for otherwise managing the Corporate Defendants, including with regard to the unlawful practices complained of in this action.

17.     Defendant Jaswinder Singh ("Mr. Singh") is an owner and operator of the Corporate Defendants. Upon information and belief, throughout the relevant time period, Singh was responsible for determining the Corporate Defendants' policies with respect to payroll and employment practices, and for otherwise managing the Corporate Defendants, including with regard to the unlawful practices complained of in this action.

18.     The Defendants listed in paragraphs 16 and 17 are collectively referred to as the "Individual Defendants."

19.     The Individual Defendants directed and exercised control over the day-to-day operations of the Corporate Defendants, including over Plaintiff and the Corporate Defendants' other similarly situated employees. They are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, and to NYLL § 2 and the regulations promulgated thereunder. Individual Defendants are therefore jointly and severally liable with the Corporate Defendants.

20.　　Upon information and belief, at all relevant times, the Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21.　　Upon information and belief, at all relevant times, the Corporate Defendants have had annual gross revenues in excess of five-hundred-thousand dollars ($500,000.00).

22.　　At all relevant times, Defendants employed Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

23.　　At all relevant times, Plaintiff and the Class Members were employed by Defendants within the meaning of the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.　　Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First and Second Claims for Relief as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by the Corporate Defendants, at any time during the period that commenced three (3) years prior to the filing of this Complaint and through the entry of judgment in this case (the "Collective Action Period"), who worked as store clerks, assistants and stockers (the "Collective Action Members").

25.　　A collective action is appropriate because Plaintiff and the Collective Action Members are similarly situated. They have substantially similar job duties, are paid under a substantially similar payment structure, and are all subject to the illegal policies and practices by which Defendants refused and/or willfully failed to compensate them for all hours worked, to compensate them at the minimum wage for all hours worked, and to provide overtime premiums

for all hours worked in excess of forty (40) hours per week. The claims Plaintiff makes in this action are substantially similar to those of the Collective Action Members.

26.    The Collective Action Members are readily ascertainable. The number and identity of the Collective Action Members can be determined from the records of Defendants. For purposes of notice, as well as other purposes related to this action, their names and addresses are available from Defendants. Notice can be provided by means permissible under the Federal Rules of Civil Procedure.

## NYLL RULE 23 CLASS ALLEGATIONS

27.    Pursuant to the NYLL, Plaintiff brings his Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by the Corporate Defendants in New York, at any time during the period that commenced six (6) years prior to the filing of this Complaint and through the entry of judgment in this case (the "Class Period"), who worked as store clerks, assistants, and stockers (the "Class" or "Class Members").

28.    The Class Members are readily ascertainable. The number and identity of the Class Members can be determined from the records of Defendants. For purposes of notice, as well as other purposes related to this action, their names and addresses are available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure.

29.    The Class Members are so numerous that joinder of all members is impracticable. The precise number of Class Members is unknown. However, upon information and belief, there are more than forty (40) Class Members.

30.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

      a.     whether Defendants employed Plaintiff and the New York Class Members within the meaning of the NYLL;

      b.     whether Defendants had a policy or actual practice of paying a flat weekly rate or "salary" to Plaintiff and the New York Class Members;

      c.     whether Defendants failed and/or refused to pay Plaintiff and the Class Members the prevailing wage for all hours worked;

      d.     Whether Defendants failed and/or refused to pay Plaintiff and the Class Members at least the minimum wage for all hours worked;

      e.     Whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per work week;

      f.     whether Defendants failed to pay Plaintiff and the Class Members an extra hour of minimum wage when they worked shifts in excess of ten (10) hours or split shifts;

      g.     whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.     whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.     whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

j.     whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements, and attorneys' fees.

31.     Plaintiff's claims are typical of the Class Members' claims. Like all Class Members, Plaintiff is an employee of Defendants who worked for Defendants pursuant to their corporate policies. Like all Class Members, Plaintiff was, *inter alia*, not paid the prevailing wage for all hours worked; not paid minimum wage for all hours worked; not paid overtime premiums for hours worked in excess forty (40) hours per week; not paid spread-of-hours premiums for days in which Plaintiff worked in excess of ten (10) hours and/or a split shift; not provided proper wage statements with each of his wage payments; not provided time for meal breaks; and not provided proper wage notice when hired or before February 1 of each year. The claims Plaintiff makes in this If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

32.     Plaintiff and his Counsel will fairly and adequately represent the Class. Plaintiff and the Class Members have no conflicting or antagonistic interests.

33.     Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.     A class action is superior to other available methods for the efficient adjudication of this litigation. The questions presented in this action can be decided by means of common, class-wide proof. If it deems it appropriate, this Court is empowered to fashion methods to efficiently manage this action as a class action. A class action will therefore permit a large group of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplicative efforts and expense that numerous individual actions would entail. As a result, a class action will best serve the public interest in preserving the public's resources and the resources of this Court.

35.     A class action is superior to other available methods for the fair adjudication of this litigation. Prosecuting the Class Members' claims individually incurs the risk of inconsistent and/or varying adjudications of their claims, which would establish incompatible standards of conduct for the Defendants, and potentially result in the impairment of Class Members' rights and interests through actions to which they were not party.

36.     Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. Because the losses, injuries, and damages suffered by each of the individual Class Members are relatively small in the context of class action litigation, the costs and burdens of litigation would impede their ability to redress the wrongs done to them by Defendants. In addition, a class action provides Class Members who are not named in the complaint a degree of anonymity from Defendants, which permits them to vindicate their rights without fear of direct or indirect retaliation by Defendants or threats to their employment, future employment, or future efforts to secure employment.

37.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

38.    The Corporate Defendants comprise a chain of grocery stores and wholesale grocers with at least thirteen (13) locations throughout California, Massachusetts, Pennsylvania, New Jersey, and New York. At any given time, the Corporate Defendants employ hundreds of store clerks, assistants, and stockers across all of their locations.

39.    The Corporate Defendants are owned and operated by Individual Defendants as a single integrated enterprise. They share common management, common policies and practices, unified labor relations under centralized control, and common ownership or financial control. In addition, Individual Defendants advertise the Corporate Defendants as a unified business with multiple locations.

40.    Individual Defendants are regularly present at, or otherwise in regular contact with, each of the Corporate Defendants' locations. They oversee operations, implement policies, and enforce compliance.

41.    From May 2015 through January 2017, Defendants employed Plaintiff as a store clerk at the Maspeth Location. At least twenty (20) other employees worked at the Maspeth Location with Plaintiff.

42. Plaintiff's duties included tracking inventory, stocking shelves, loading and unloading of delivery trucks, placing orders to restock inventory, inspecting merchandise, and preparing daily reports for his manager.

43. In May 2015, Plaintiff worked forty (40) hours per week, and was paid a flat weekly rate of six hundred dollars ($600.00). Although Plaintiff's hours per week would later increase in the course of his employment by Defendants, his weekly pay would remain unchanged for its duration.

44. In June 2015, Plaintiff's hours increased to sixty-two (62) hours per week. He worked six (6) shifts per week, five (5) of which were ten (10) hours in length, one (1) of which was twelve (12) hours. On Thursdays, Plaintiff worked from 5:00am until 5:00pm; every other day from Monday through Saturday, Plaintiff worked from 6:00am until 4:00pm. Plaintiff would work according to this schedule through the end of January 2016. He continued to be paid six hundred dollars ($600.00) per week.

45. In December 2015, Plaintiff first complained to Defendants about the wages he was owed, and requested back pay for the overtime premiums he had not received, as well as overtime premiums going forward. Plaintiff made this complaint to Mandeep Singh, a senior manager of the Corporate Defendants, who circulated among the Corporate Defendants' various locations, and to whom all of the Corporate Defendants' employees reported.

46. In response, Mandeep Singh informed Plaintiff that he would look into Plaintiff's complaint. Plaintiff waited two (2) weeks, but received no response from Mandeep Singh. Plaintiff then contacted the Individual Defendants directly and requested a meeting with them.

47.     Later in December 2015, Plaintiff sat down with the Individual Defendants for an in-person meeting regarding the wages and premiums he was owed. At that meeting, the Individual Defendants promised Plaintiff that they would pay him the entire amount he was owed, on the following schedule: an initial installment of five-thousand dollars ($5,000.00) was to be paid by the end of January 2016, and the remainder of what Plaintiff was owed was to be paid by the end of April 2016.

48.     By the start of February 2016, Defendants had not made a payment of five-thousand dollars ($5,000.00) to Plaintiff.

49.     However, at the start of February 2016, Plaintiff's hours again increased, to sixty-eight (68) hours per week. Defendants assigned Plaintiff an additional task--delivering the Maspeth Location's daily sales reports to the Individual Defendants at their office located at 72-20 37th Avenue, Jackson Heights, New York 11372. The new task added another hour to the end of each of Plaintiff's shifts, resulting in him working five (5) shifts per week that were eleven (11) hours long, and one (1) shift per week that was (13) hours long.

50.     In or about March 2016, during one of Individual Defendants' visits to the Maspeth Location, Plaintiff again asked them for the back pay to which he was entitled, and which they had promised to pay. The Individual Defendants made excuses for the delays in payment, but again promised to pay Plaintiff the money they owed him.

51.     In March 2016, Plaintiff's hours were temporarily reduced back to sixty-two (62) hours per week, at the same schedule he had been working from June 2015 until January 2016.

52.     In April 2016, Defendants once again tasked Plaintiff with delivering the Maspeth location's daily sales report to the Individual Defendants in Jackson Heights, which required him

to work one (1) additional hour per shift, on the same schedule of weekly shifts he worked in February 2016. In addition, Defendants began requiring Plaintiff to place orders from produce vendors in California and Florida. Because of the vendors' delivery schedules, Plaintiff was required to work for at least one (1) hour, between 8:00pm and 10:00pm, every Monday and Tuesday.

53.    From April 2016 until his termination in January 2017, Plaintiff worked at least seventy (70) hours per week, across six shifts per week, on the following schedule:

Monday:       6:00am-5:00pm, with one (1) additional hour of work between 8:00pm and 10:00pm, for a total of twelve (12) hours;

Tuesday:      6:00am-5:00pm, with one (1) additional hour of work between 8:00pm and 10:00pm, for a total of twelve (12) hours;

Wednesday:    6:00am-5:00pm, for a total of eleven (11) hours;

Thursday:     5:00am-6:00pm, for a total of twelve (12) hours:

Friday:       6:00am-5:00pm, for a total of eleven (11) hours;

Saturday:     6:00am-5:00pm, for a total of eleven (11) hours.

54.    In or about July or August 2016, Plaintiff asked Mandeep Singh about the status of the payments that the Individual Defendants had promised to make to him. During the ensuing conversation, Mandeep Singh first claimed that the Corporate Defendants were not making any money, which was the reason Plaintiff's payments were delayed. Mandeep Singh then claimed that he was no longer certain whether Plaintiff was owed the payments in question. When Plaintiff persisted in his claim for back pay, Mandeep Singh finally claimed that Plaintiff had not been fulfilling his duties properly and threatened to fire Plaintiff.

55.    Despite Mandeep Singh's threats, the Defendants did not fire Plaintiff at that time, nor did they alter his responsibilities.

56.    In or about July or August 2016, the Individual Defendants stopped answering Plaintiff's phone calls and claimed to be unable to meet with him in person.

57.    Plaintiff continued to complain to Mandeep Singh about the wages and premiums he was owed, as well as to Twinkle Rana, another senior manager employed by the Corporate Defendants.

58.    In December 2016, Plaintiff met with Twinkle Rana regarding the wages and premiums he was owed. Twinkle Rana informed him that the Defendants would not be paying him any back pay. Twinkle Rana further informed Plaintiff that he would be unable to seek any recourse, or make any other complaints about the Defendants' labor practices, because of Plaintiff's immigration status.

59.    In January 2017, Plaintiff was scheduled to meet with Twinkle Rana and Mandeep Singh again. However, instead of meeting at the Maspeth Location or any of the Corporate Defendants' other principal places of business, Plaintiff was driven, without his advance knowledge, to an attorney's office in Hempstead, New York.

60.    The attorney presented himself as the legal representative of the Defendants, and informed Plaintiff that the purpose of the meeting was not to discuss his claims for back pay, but to discuss a lawsuit that Defendants intended to file a lawsuit against Sandeep Arora, a manager at the Maspeth Location, under whom Plaintiff worked. Twinkle Rana, Mandeep Singh, and the attorney claimed that Sandeep Arora had been stealing inventory from the Corporate Defendants in order to supply his own competing wholesale grocer.

61.     In the meeting, Twinkle Rana, Mandeep Singh, and the attorney made Plaintiff the following offer: If Plaintiff agreed to testify against Sandeep Arora, the Defendants would pay him the wages and premiums he was owed. If Plaintiff did not agree to testify, the Defendants would refuse to pay him the wages and premiums, immediately fire him, name him as a defendant in their lawsuit against Sandeep Arora, and ensure that Plaintiff was deported from the U.S.

62.     Plaintiff informed Twinkle Rana, Mandeep Singh, and the attorney, that he could not to testify against Sandeep Arora, because he had no knowledge of the allegations against Sandeep Arora and was unwilling to provide false testimony.

63.     The following day, Mandeep Singh arranged for Plaintiff meet with the Individual Defendants at their office located at 72-20 37th Avenue, Jackson Heights, New York 11372. In the meeting, the Individual Defendants reiterated the offer that Twinkle Rana, Mandeep Singh, and Defendants' attorney had made the day before: Plaintiff could testify against Sandeep Arora and receive the wages and premiums he was owed, or he could refuse, be fired, named as a defendant in the lawsuit against Sandeep Arora, and deported. Plaintiff again refused to testify.

64.     The next day, the Individual Defendants began to follow through on their threats. Plaintiff was notified that his employment was terminated, and Plaintiff was named as a defendant in the Individual Defendants' lawsuit against Sandeep Arora.

65.     Plaintiff received no compensation for the final two weeks of his employment, during which he worked ninety-eight (98) hours.

66.     Plaintiff never received any back pay or other compensation for the unpaid wages and premiums he was owed due to his employment by Defendants.

67.    Throughout Plaintiff's employment period, Plaintiff did not receive time for meal breaks, even though all of Plaintiff's shifts were at least ten (10) hours in length.

68.    Throughout Plaintiff's employment period, Plaintiff did not receive overtime premium pay for hours worked over forty (40) in a given workweek, even though Plaintiff regularly worked well in excess of forty (40) hours each week.

69.    Throughout Plaintiff's employment period, Plaintiff was not paid spread-of-hours premiums for working shifts in excess of ten (10) hours in a single day, even though Plaintiff regularly worked in excess of ten (10) hours in a single day.

70.    Throughout Plaintiff's employment period, Plaintiff was not provided with proper wage notices at the time he was hired or by February 1 of each year.

## FIRST CAUSE OF ACTION

## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE PAYMENTS

71.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

72.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206 and 215(a)(2).

73.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

74.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore,

Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**

**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME PREMIUMS**

**(Brought on Behalf of Plaintiff and the Collective Action Members)**

75.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76.    Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by improperly treating them as exempt from the FLSA when they performed non-exempt grocery clerk duties and failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

77.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

78.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

79. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

### (Brought on Behalf of Plaintiff and the Class Members)

80. Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

81. Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay the correct statutory minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

82. Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et seq.

## FOURTH CAUSE OF ACTION

## NEW YORK LABOR LAW – UNPAID OVERTIME

### (Brought on Behalf of Plaintiff and the Class Members)

19

83.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     Defendants violated the NYLL overtime rights of Plaintiff and the Class Members by improperly treating them as exempt from the NYLL when they performed non-exempt store clerk duties, and by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

85.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

86.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et seq.

## FIFTH CAUSE OF ACTION

## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS

### (Brought on Behalf of Plaintiff and the Class Members)

87.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, et seq., and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146.16 (2012).

89.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) et seq.

## SIXTH CAUSE OF ACTION

## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS

### (Brought on Behalf of Plaintiff and the Class Members)

90.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants have willfully failed to supply Plaintiff and the Class Members a proper wage statement as required by Article 6, § 195(3).

92.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants one hundred dollars ($100.00) per employee for each workweek that the violations occurred or continue to occur, as provided for by NYLL §§ 198(1-d), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION

### NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS

**(Brought on Behalf of Plaintiff and the Class Members)**

93.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.    Defendants have willfully failed to provide Plaintiff and the Class Members notice as required by NYLL, Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

95.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, § 198(1-b)., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and the appointment of Plaintiff and his counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage pursuant to the FLSA, the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wage pursuant to the FLSA, the NYLL, and supporting regulations;

h.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA, the NYLL, and supporting regulations;

i.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, the NYLL, and supporting regulations;

j.    An award of damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

k.    An award of one hundred dollars ($100.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a

total of twenty-five hundred dollars ($2,500.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d).

l.      An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of twenty-five-hundred dollars ($2,500.00) per Plaintiff and each of the Class Members as provided for by NYLL §198(1-b);

m.     An award of pre-judgment and post-judgment interest;

n.      An award of costs and expenses of this action, together with reasonable attorneys' fees;

o.      Any and all additional relief this Court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: New York, New York
       January 24, 2019

Respectfully submitted,

/s/ Naresh M. Gehi

Naresh M. Gehi, Esq.
*Attorney for Plaintiff*
Gehi & Associates
118-21 Queens Blvd., Suite 409
Forest Hills, NY 11375

25

# EXHIBIT A

## CONSENT TO SUE UNDER FEDERAL LABOR STANDARDS ACT

I am an employee currently or formerly employed by Maspeth Wholesale Corp., doing business as Apna Wholesale. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

VINAY BASSI
_____
Full Legal Name (Print)

_____
Signature

01 | 23 | 2019
_____
Date